## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

**JACK Z. WILKINS**                                                                 **PLAINTIFF**

**v.**                                            **Case No.  06-2163**

**U.S. BANK, NATIONAL ASSOCIATION,**
**A National Bank, individually and as**
**successor in interest to Mercantile Trust Co.**                      **DEFENDANT**

### MEMORANDUM ORDER AND OPINION

This case involves an attempt to recover payments for bonds issued in 1919 that were discovered in a trunk purchased by Plaintiff at an estate sale.  Plaintiff alleges a breach of trustees' fiduciary duty, fraud, and seeks an accounting and damages from Defendant.  Currently before the Court are Plaintiff's Partial Summary Judgment Motion (Doc. 25) and supporting documents (Docs. 26-27); Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Doc. 32) and supporting documents (Docs. 33-34); Defendant's First and Second Supplemental Responses to Plaintiff's Motion for Partial Summary Judgment (Docs. 57 and 59) and supporting document (Docs.  58 and 60); and, Plaintiff's Reply to Defendant's Responses (Doc.  63).  Also before the Court is the Defendant's Motion for Summary Judgment (Doc.  65) and supporting documents (Docs.  66-67, 79-80), and Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc.  70) and supporting document (Doc.  71).

For the reasons set forth herein, the Plaintiff's Motion for Partial Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.  Accordingly, Plaintiff's claims are DISMISSED WITH PREJUDICE.

1

**STANDARD OF REVIEW**

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c). The burden of proof is on the moving party to set forth the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986). "The non-moving party, however, must still "present evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in [their] favor." *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1003-4 (8th Cir. 2005) (quoting *Gregory v. City of Rogers, Ark.*, 976 F.2d 1006, 1010 (8th Cir. 1992)). Summary judgment is appropriate where a plaintiff fails to present evidence sufficient to create a jury question as to an essential element of his claim. *Turner v. Honeywell Fed. Manuf. & Tech.*, 336 F.3d 716 (8th Cir. 2003).

Plaintiff argues he has "in essence, already prevailed on the issues in this partial summary judgment motion. . . . as the Court denied U.S. Bank's motion [to dismiss] and held that Mr. Wilkins's complaint stated a cause of action." (Doc. 25). In response to Defendant's motion for Summary Judgment, Plaintiff states, "Mr. Wilkins has already produced evidence consistent with the allegations in his Complaint. And, because this Court has already ruled that his Complaint stated causes of action, the fact that Mr. Wilkins has evidence consistent with the allegations in his Complaint precludes U.S. Bank's summary judgment motion. Thus, Mr. Wilkins is simply asking this Court to reach the same legal conclusions it reached in denying the motion to dismiss." (Doc. 70).

Plaintiff fails to recognize the difference in the standards for successfully surviving a

AO72A
(Rev. 8/82)

motion to dismiss and surviving or prevailing on a motion for summary judgment.  In ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the non-moving party." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir.  1996).  Complaints should be liberally construed in the plaintiff's favor and "'should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief'." *Rucci v.  City of Pacific*, 327 F.3d 651, 652 (8th Cir.  2003) (quoting *Conley v.  Gibson*, 355 U.S. 41, 45-46 (1957)).  This is a relatively light burden.  In contrast, in order to prevail on a motion for summary judgment, the moving party must show there is no genuine issue of material fact.  This is a higher burden than the burden necessary in a motion to dismiss.

## Background

Plaintiff alleges he is the holder of 390 bearer bonds ("bonds") of $1,000.00 denomination secured by a Mortgage and Deed of Trust ("trust") of the Fort Smith, Subiaco and Rock Island railroad ("Railroad") issued in Logan County on August 19, 1919.  (Doc.  1).  Mercantile Trust Company, a Missouri corporation, and its successors by merger, ("Mercantile") was the original trustee of the bonds.  Through a series of mergers, Mercantile merged with the Defendant U.S. Bank who by virtue of the Bank Merger Act, assumed Mercantile's liabilities.  The Plaintiff alleges that the Defendant neglected its role as trustee by allowing the assets to be squandered and by failing to provide an accounting, and in acknowledging its fiduciary duty, and providing the owed monies.  (Doc.  1).

The bonds issued in 1919 are thirty year bonds that ran from August 1919 to August 1949.

3

The Plaintiff contends the bonds were renewed and extended in July 1954 for another thirty years, thereby making 1984 the maturity date.  (Doc.  9-1).

According to the Plaintiff, he and a friend purchased antique trunks at an estate sale in 1974.  When they opened the trunks, they discovered the bonds at issue in this case.  (Doc.  60). Plaintiff researched the bonds and discovered they were listed in Moody's Investment Manual through approximately 1959 or 1960.  (Doc.  60).  Ten years after discovering the bonds, Plaintiff purchased his friend's share of the bonds and contacted Mercantile Bank in an attempt to pursue a claim on the bonds.  (Doc.  90).  In July of 1984, Plaintiff meet with A.O. Johnson at Mercantile Bank.  (Doc.  90).  Plaintiff directed inquiries concerning the bonds to the trustee bank Mercantile, and states the bank advised that it would investigate the bonds and examine the trust files.  The Plaintiff claims that the bank did not dishonor the bonds but rather gave him every indication that the bonds had value.  For approximately five years after the meeting at the bank, the Plaintiff contends he periodically inquired about the bonds but was provided no answer as to their value.  (Doc.  9-1).

In late 2004, Plaintiff alleges that the bank informed him that the trust money securing the bonds had been embezzled and the bank would not honor the bonds.  The Plaintiff demanded documents and an accounting but was informed the bonds were only collector's items and were barred by bankruptcy.  (Doc.  9-1).  The Plaintiff alleges he conducted research concerning the bonds and discovered that the bank had made many false representations, i.e. the bank stated the bonds were discharged in bankruptcy and that it had "voluminous" records relating to the trust. The Plaintiff alleges both representations are false.  (Doc.  9-1).

The Plaintiff contends that when the Railroad ceased business operations in 1960, the bank

4

failed to fulfill its role as trustee by not protecting the bond holder by foreclosing on the liens it held for the Railroad's real and personal property.

During bankruptcy proceedings, the presiding Judge, in an opinion dated June 12, 1941, found the assets were transferred by the Company to a committee consisting of three individuals who were the beneficiaries. The assets included the bonds.[1] Defendant argues the Committee actively participated in the bankruptcy, and that it controlled the assets of the Company and the operations of the railroad. Therefore, any complaint about the performance or lack of performance by the trustee has been waived. (Doc. 90). Defendant argues the railroad while under the control of the Committee sought and received approval to abandon part of its line.[2] The bankruptcy trustee sold the line and the bankruptcy judge approved the sale. Defendant argues this shows the bondholders approved and instigated the disposition of the assets during the bankruptcy case. Defendant argues if any other property was abandoned or sold by the Railroad, it was done by the bondholders who were running the Railroad and that any complaint a future bondholder might have concerning the disposition of property was waived. (Doc. 90).

Defendant also contends the marginal notation the Plaintiff claims extended and renewed the bonds did not extend the bonds maturity date. Defendant argues there is no evidence the railroad approved or authorized the notation and Plaintiff can provide no such evidence. Further,

---

[1] In the opinion, the Judge notes the American Construction Company was the owner of the entire capital stock of the railroad company in the sum of $400,000.00 par value, later reduced in value to $40,000.00. This reduction in value was set out in the Proof of Claim of Stockholders, dated October 23, 1938 and filed in this Court.

[2] In a Petition of First Mortgage Bondholders and Stockholders for Removal of Trustee and Appointment of Successor filed July 31, 1941 in this Court, the remaining members of the Committee state that approximately one-half of the railroad line had been dismantled and sold.

AO72A
(Rev. 8/82)

Defendant states according to the Railroad Commission Report, the bonds matured in 1949 and are listed under the category "Debt in Default" for the year ending December 31, 1955 in the Annual Report to the Public Service Commission. (Doc. 90). Defendant also argues the marginal notation did not bear the attestation of the clerk of the court as required by Arkansas statute and is therefore invalid. (Doc. 90).

Defendant argues that even if the bonds were still valid in 1984, Plaintiff's contention that he deferred any action because of his reliance on promises received from Mercantile Bank is insufficient to toll the statute of limitations. Defendant points to Plaintiff's account of the 1984 meeting with A.O. Johnson of Mercantile bank as contradicting Plaintiff's claim. Plaintiff testified he meet with Mr. Johnson and Mr. Johnson told him he would pass the information on to the person who was to replace him as he was retiring. Plaintiff testified he was told by Mr. Johnson the bank would research the bonds and call him. (Doc. 90). Plaintiff testified for five years he called the Bank about twice a year and was told more research was needed.

Plaintiff testified he was not actively researching the bonds because he was working and did not have the time to research the bonds. During this time period, Plaintiff graduated from Oxford University with a law degree and was employed for twenty-seven years by Universal Medallion Trust, a mortgage company that assisted the Treasury Department in redeeming bonds issued during World War II and the Korean War. Plaintiff testified in his deposition, he "didn't start the in-depth research until about 2002 or 2003." At that time, he contacted U.S. Bank and started a dialogue with them. (Doc. 63, Ex. 7).

**Trust v. Mortgage**

Plaintiff argues that he is a beneficiary of a trust and Defendant is the Trustee. Defendant

argues this is not a true trust and therefore it is not governed by trust law.  The documents involved are a mortgage, indenture and deed of trust.  The Arkansas Supreme Court has stated, "a deed of trust is deed conveying title to real property to a trustee as security until the grantor repays a loan.  This type of deed resembles a mortgage." *First United Bank v. Phase II*, 347 Ark. 879, 894, 69 S.W.3d 33, 44 (2002).  The Court stated, "the importance in understanding the terminology here is that while the parties call this a "trust" it is not a trust in the classic "donative" sense of the word, and this court has determined on several occasions that an indenture trust is actually a contractual relationship among several parties." *Id.* at 895.

The document itself contains language that reflects the document is more akin to a mortgage than a trust.  "If the Railroad Company shall well and truly pay to the holders therof the principal of the bonds secured hereby . .  and the interest moneys to become due thereon . . . then these presents and the trust hereby created shall cease and determine, and all the estate, right, title and interest hereby vested in the Trustee shall at once be divested."  The Courts have held that the presence of a defeasance clause indicates that a deed of trust is actually a mortgage.  "A mortgage or a trust in the nature of a mortgage differs from a trust, in that in a mortgage or trust in the nature of a mortgage the property is to revert or be conveyed to the grantor upon the payment of the debt secured.  *Neikirk v. Boulder Nat. Bank*, 53 Colo. 350, 353-354, 127 P. 137, 139 (Colo. 1912). See also *McDonald v. Graham*, 30 Kan. 170, 2 P. 507 (Kan. 1883); *Smith v. Empire Lumbar Co.*, 57 Ark. 222, 21 S.W. 225 (Ark. 1893).

Based upon the presence of the defeasance clause, it is apparent a trust does not exist and the document is more in the nature of a mortgage.  Therefore, Defendant is not in the position of trustee to Plaintiff and no fiduciary relationship exists between the parties.  The relationship

AO72A
(Rev. 8/82)

between Plaintiff and Defendant rather is more in the nature of a business or contractual relationship.

**Holder in Due Course**

Defendant argues Plaintiff is not a holder in due course of the bonds.  Under Arkansas law, a holder in due course is one who in good faith takes an instrument for value and without notice that is overdue or has been dishonored or is subject to any defense against or claim to it on the part of any person.  Ark. Code Ann. § 4-3-302.  "Good faith" is defined as "honesty in the conduct or transaction concerned." Ark. Code Ann. § 4-1-201(25).  A person has "notice" of a fact when he has actual knowledge of it; or he has received a notice or notification of it; or from all the facts and circumstances known to him at the time in question he has reason to know that it exists. *Id.  See also Roy v.  Recker,* 225 F.Supp. 743 (D.C. Ark. 1963); *Richardson v.  Girner*, 282 Ark. 302, 668 S.W.2d 523 (1984).

A person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, (ii) by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or (iii) as the successor in interest to an estate or other organization.  Ark. Code Ann. § 4-3-302(c).  But if the prior holder was a holder in due course, the purchaser obtains rights of a holder in due course.  Comment 5 to Ark. Code Ann. § 4-3-302.

The Plaintiff testified that he and a friend purchased numerous items for $350.00 which included an antique trunk at an estate sale.  They opened the trunk at home and found various bonds issued by various companies, including the ones that are the source of this litigation.  The two divided the bonds in question, with Plaintiff taking one bond and his friend retaining the

8

majority of the bonds with the intent that each person would research the bonds and determine

if they had any value.  Plaintiff produced no documentation from an executor or administrator for

the estate releasing the bonds in question, and Plaintiff had no personal knowledge that the estate

owned or had any interest in the bonds. (Doc.  59-5).

The manner the Plaintiff came into possession of the bonds is so peculiar and out of the

ordinary course of business as to put Plaintiff on notice that he is  not a holder in due course of

the bonds.  Plaintiff took possession of the bonds subject to any defenses that may be raised.

The bonds were originally issued in 1919 to the American Construction Company as

security for the building of a railroad.  In 1938, a bankruptcy judge noted that in 1921, the

construction company transferred all of its assets to a committee which consisted of Charles

Sommer, and two other individuals. Those assets included the bonds in question.  This committee

participated in the bankruptcy, filing proofs of claim for the stockholders and bondholders, and

obtaining permission to replace the trustee.  Plaintiff testified he reviewed reports made to the

Arkansas Railroad Commission which showed that the committee controlled 392 out of 400

shares of the issued stock and, through 1959, had the authority to name the majority of the Board

of Directors.  (Doc. 66, Ex.  D).

During the time period the Committee controlled the assets of the railroad, a petition was

filed and approved to abandon at least half of the railway according to Plaintiff's testimony and

records from the Bankruptcy Court.  (Doc. 66, Ex.  F).  Arkansas law is clear, "knowing consent

to an act by a trustee by a competent beneficiary will waive that beneficiary's right to later bring

an action against the trustee for the act." *Buchbinder v.  Bank of America, N.A.*, 342 Ark.  632,

30 S.W.3d 707 (Ark.  2000).  Plaintiff can acquire no greater rights than what his predecessor -in-

9

interest had, so any claims relating to the Committee's actions were waived before Plaintiff acquired the bonds.

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### Liability of U.S. Bank

Plaintiff argues Defendant is liable to him under various torts including breach of fiduciary duty, conversion, negligence, unjust enrichment and fraud.

**Fraud**

The tort of fraud, misrepresentation or deceit consists of five elements which must be proved by a preponderance of the evidence: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Hampton v. Taylor*, 318 Ark. 771, 778, 887 S.W.2d 535, 540 (Ark. 1994) citing *Roach v. Concord Boat Corp.*, 317 Ark. 474, 880 S.W.2d 305 (1994); *Wheeler Motor Co. v. Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993).

Plaintiff contends that he has proven all of the above elements. He states in 1984 he made a demand for payment and Defendant gave him assurances as to the value of the bonds and that he reasonably relied on those assurances. (Doc. 27). According to Plaintiff's deposition testimony, in July of 1984, he presented the bonds to an employee of Mercantile Bank, Mr. A.O. Johnson. Mr. Johnson told Plaintiff he could not find the documents he needed and he was soon to retire, but stated he would turn the documents over to the one who was taking his place. Allegedly, Mr. Johnson said the Bank would have to do some research, find some other

10

documents, make a decision and get back with Plaintiff. (Doc. 9). After this conversation, Plaintiff contacted the Bank about twice a year for five years. (Doc. 10). Plaintiff stated during these calls a bank representative would advise him they were still doing research and did not have all the information necessary to give him an answer. Plaintiff contends he has proven Defendant committed fraud and he has met the necessary burden of proof on all five elements to prevail on his summary judgment motion.

Defendant contends the statute of limitations bars Plaintiff from recovering under his theory of fraud. The statute of limitations for fraud is three years. Ark. Code Ann. § 16-56-105 (1987). *Hampton v. Taylor*, 318 Ark. 771, 887 S.W.2d 535 (1994). This action was filed on September 14, 2006 so Plaintiff must neither have known nor been able to discover through reasonable diligence, the alleged fraud before September 14, 2003. In *First Pyramid Life Insurance Co. v. Stoltz*, 311 Ark. 313, 843 S.W.2d 842 (1992), the Arkansas Supreme Court wrote, "even if there was evidence of fraud on the part of First Pyramid, and there is none, the statute of limitations would still have run on this claim. 'Fraud does suspend the running of the statute of limitations, and the suspension remains in effect until the party having the cause of the action discovers the fraud or should have discovered it by the exercise of reasonable diligence.'" *Id.* at 318.

The Arkansas Supreme Court has stated, "No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud, he is

11

presumed to have had reasonable knowledge of it." *Id.* citing *Wilson v. General Electric Capital Auto Lease, Inc.*, 311 Ark. 84, 87, 841 S.W.2d 619, 620-21 (Ark. 1992).

Plaintiff stated that from 1984 to 1989 he did not actively research the bonds as he was working, traveling and spending time with his family and did not have time to spend researching the value of the bonds. He stated he quit calling the bank after 1989 because he was tired of being "put off." He stated he was going to have to do a lot of research and secure a lot of documentation to prove the validity of the bonds so he began researching the bonds in earnest when his life slowed down. (Doc. 59-5).

Plaintiff stated he began his in-depth research in 2002 or 2003. He stated he contacted U.S. Bank which had merged with Mercantile Bank. He corresponded with the bank for a period of six to eight months. He also researched court records, archives, history museums and libraries.

Plaintiff has failed to prove there are no material facts in dispute and he is entitled to judgment as a matter of law. In order to prevail on his claim of fraud, Plaintiff, must show Defendant engaged in "some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself." *Id.* Plaintiff cannot point to any act of concealment on the part of Defendant and therefore, cannot meet his burden for summary judgment on the tort of fraud.

**Breach of Fiduciary Duty**

As previously stated, the Court finds that the deed of trust in this case is more akin to a mortgage rather than a true trust. Accordingly, no fiduciary relationship exists between the parties therefore, Plaintiff has no claim for breach of fiduciary duty.

12

**Conversion**

"Conversion is ordinarily said to consist of the exercise of dominion over the property in violation of the rights of the owner or person entitled to possession." *Thomas v. Westbrook*, 206 Ark. 841, 177 S.W.2d 931, 932 (1944). The facts supporting Plaintiff's claim of conversion are weak and certainly not undisputed. As set out above, Plaintiff presented the bonds to Defendant in 1984. He can point to no evidence or testimony that Defendant ever had in its possession the property he is claiming he is entitled to. In fact, the evidence presented shows the bondholders themselves, who had control over the railroad and its property actively participated in the liquidation of much of the property secured by the bonds. Plaintiff has failed to prove there is no dispute as to material facts such that he is entitled to summary judgment.

**Negligence**

To prove negligence, a party must how that the defendant has failed to use the care that a reasonably careful person would use under circumstances similar to those shown by the evidence in the case. *Earnest v. Joe Works Chevrolet, Inc.*, 295 Ark. 90, 92 746 S.W.2d 554, 555 (1988). The facts as cited above also show that Plaintiff has failed to meet his burden on the issue of negligent acts by Defendant. The material facts are simply not uncontested and for the reasons stated above, Plaintiff is not entitled to summary judgment on the issue of negligence.

### Demand for Accounting

It is uncontroverted that when Defendant merged with Mercantile Bank under the Bank Merger Act it also became liable for Mercantile's liabilities. Mercantile Bank as the trustee of the bonds was accountable to the beneficiaries for an accounting, therefore Defendant may now be accountable to the beneficiaries. However, the Arkansas Supreme Court has held that,

13

AO72A<br>(Rev. 8/82)

Whenever an action is brought into equity to compel a personal representative, or other trustee to render an account of the funds coming into his hands the court will, irrespective of any statute of limitations, take into consideration, the lapse of time in determining whether the complainant is entitled to equitable relief; and will refuse to order an accounting if the complainant has been guilty of such laches as to indicate bad faith, or to render it impossible or difficult for the court to do justice between the parties.  We think this conclusion is justified and there should be added, that the rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principle participants in the transactions complained of, or of the witness or witnesses, or by the reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible.  Such announcement was restated in *Hammond v. Hopkins*, 143 U.S. 224, 250 (1892); *Patterson v. Hewitt*, 195 U.S. 309, 317 (1904).  This court is committed to the rule that long and unreasonable delays wherein prejudice has resulted by reason of change of conditions or loss of evidence, laches may rightfully be invoked against one so neglecting his alleged rights.  *Walker v. Norton*, 199 Ark. 593, 135 S.W.2d 315, 319 (1940).

Plaintiff came into possession of the bonds in 1974.  Ten years later in July, 1984, Plaintiff presented the bonds to A.O. Johnson, a vice-president at Mercantile Bank.  According to Plaintiff, Mr. Johnson told him he was retiring and someone would look into the matter and get back with him.  Plaintiff made a few phone calls to Mercantile, later Defendant U.S.Bank, over the next five years.  Plaintiff admitted he made little effort to pursue the bonds until 2001 or 2002.

Plaintiff waited twenty-two years between his meeting with A.O. Johnson and the filing of his lawsuit.  In the interim, it is apparent documents that once existed have now been lost.[3]  Various witnesses to conversations and transactions have become incapacitated or died.  Plaintiff's decision to delay taking any significant action against Defendant has resulted in rendering the ascertainment of the exact facts impossible.  Issues of material fact exist as to whether Plaintiff's long delay in taking action now precludes him from being entitled to summary

---

[3] In his deposition, Plaintiff states he was told by a librarian in Paris, Arkansas that documents once existed in the basement of the old First National Bank Building but have been lost.  (Doc. 63).

AO72A
(Rev. 8/82)

judgment on his request for an accounting.

In reviewing all of the circumstances, including Plaintiff's familiarity with bonds and deeds of trust and his legal education, he should have commenced formal proceedings within a reasonable period of time. Instead, Plaintiff put off any significant research for over twenty years until he reached "a period in my life when I had time." As Defendant points out, Plaintiff apparently believed he held bonds worth at a minimum $400,000.00 not including interest. Had Plaintiff commenced this action when he claims he was first rebuffed by Defendant, witnesses and documents now unavailable might have been available.

For the reasons stated above, Plaintiff's Motion for Summary Judgment is **DENIED**.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant argues Plaintiff's claims are based upon an alleged loss of assets securing the bonds in question which occurred forty to seventy years before the commencement of this action. Defendant argues the statute of limitations on any claim against the trustee for failing to prevent the transfer of property or for failure to obtain the proceeds of the transfers ran decades ago. Defendant points to the documentation that shows a portion of the railroad line was abandoned in 1938 and the proceeds used to pay wage claims. (Doc. 66, Ex. I). Five years later, the real property was deeded back to the original grantors. (Doc. 66, Ex. J). Any claim a bondholder would have for breach of fiduciary duty, fraud, conversion or negligence would have been extinguished by the applicable statute of limitations in 1941 and 1946 as the statute of limitations for all of those actions is three years. *See Alexander v. Flake*, 322 Ark. 239, 910 S.W.2d 190 (1995), Ark. Code Ann. § 16-56-105 (breach of fiduciary duty has statute of limitations of three years); *Stoltz v. Friday*, 325 Ark. 399, 407, 926 S.W.2d 438, 443 (1996) (claim for fraud must

15

be brought within tree year statute of limitations); *Thomas v. Westbrook*, 206 Ark. 841, 177 S.W.2d 931, 932 (1944) (three year statute of limitation for claim of conversion); *Orsini v. Larry Moyer Trucking, Inc*., 310 Ark. 179, 833 S.W.2d 366 (1992) (three year statute of limitation for negligence claims).

The railroad ceased operating in 1960, according to Plaintiff, (Doc. 59-5), and any claim related to the disposition of the remaining assets would have to be brought within the three year statute of limitations or by 1963. As Defendant states, once the bonds became unenforceable, the disposition of any remaining assets securing the bonds is immaterial. Plaintiff argues the bonds were extended by a handwritten marginal notation dated July 21, 1954 which purportedly extends the bonds. However, Plaintiff testified he did not find any evidence that the Railroad, its shareholders or the directors ever authorized the marginal notation or that Mercantile Bank was aware of the notation. (Doc. 59-5). Further, Plaintiff testified the Railroad Commission Reports indicated the bonds matured in 1949. Defendant points out that under the statute in effect at the time, "no written or oral acknowledgment of indebtedness thereon, shall operate, so far as affects the rights of third parties, to revive said debts or extend the operation of the statute of limitation with reference unless a memorandum showing such extension or renewal is endorsed on the margin of the record where such instrument is recorded, which endorsement shall be attested and dated by the clerk." Ark. Stat. Ann. § 51-1010 (1947). The notation does not have any such attestation, it is only signed by a B.A. Brown.

An unattested notation on the margin of a document is insufficient to extend the maturity date of the bonds at issue. The bonds matured at the latest in 1954 and were purchased by Plaintiff in 1974, twenty years after their maturity date. Any remaining claims would have to

16

have been brought before the bonds became unenforceable.  Plaintiff did not contact Defendant until 1984, thirty years after the maturity date and well after any applicable statute of limitations periods.  Plaintiff is barred by the statute of limitations from bringing any of his claims. Defendant's motion for summary judgment is **GRANTED**.

### CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Partial Summary Judgment is DENIED. Defendants' motion for summary judgment is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.  Plaintiff's Motion for a More Particular Statement or, alternatively, to Substitute or Add Defendants (Doc. 81) is DENIED AS MOOT.

IT IS SO ORDERED this 19th day of September, 2007.

_/s/ Robert T. Dawson_
Honorable Robert T. Dawson
United States District Judge

17